UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 07-23245 CIV-Garber

BLUESTAR ENTERTAINMENT
INTERNATIONAL, INC. and BLUESTAR
INTERNATIONAL PUBLISHING, INC.,

    Plaintiffs
v.

MARCUS COOPER,

    Defendant.
_____/

## PLAINTIFFS' RESPONSE TO MR. MCKINNIE'S NOTICE OF COMPLIANCE

Plaintiff, Bluestar Entertainment, Inc., et. al., ("Bluestar"), Response to Mr. McKinnie's Notice of Compliance (D.E. 294) as follows:

### OVERVIEW

In an effort to exact sanctions from the Plaintiffs and their counsel, Defendant McKinnie's counsel has misstated the record and has ignored the evidence produced in this case. Accordingly, Plaintiffs prior responses and its response contained herein, there is no basis to award fees and costs under Florida Statute §57.105 nor Fed. R. Civ. Pro. 11.

A)      <u>Plaintiffs had a legally tenable claim against Mr. McKinnie</u>

Mr. McKinnie cannot rebut the evidence produced in this case that the underlying claims against him were factually and legally supported. The essence of the underlying claims were that Mr. McKinnie acted in concert with Marcus Cooper p/k/a Pleasure to induce Mr. Cooper to breach his contracts with Bluestar and form a new record company called Swagga Entertainment. The recordings from Swagga Entertainment incorporate

the trademarks and intellectuals property belonging to the Plaintiff, which violated of the exclusivity clause of Mr. Cooper's contracts with Bluestar. (See D.E. 26).

Mr. McKinnie cannot rebut the videotaped interviews and the press releases that he and Mr. Cooper brazenly distributed on internet, nor the radio and television interviews in which they each described the very activities which formed the essence of the Complaint. Specifically, prior to the lawsuit, Mr. McKinnie and Mr. Cooper issued press releases, gave public interviews, appeared on television and at a radio interview not only bragging they have <u>together</u> formed Swagga Entertainment <u>as partners</u>, but that Mr. Cooper had left Bluestar Entertainment to start a new venture <u>with Mr. McKinnie</u>. (See D.E. 97) No where in Mr. McKinnie's pleadings does he deny this evidence. Instead of addressing the evidence, Mr. McKinnie's counsel attacks opposing counsel, claiming Plaintiff did not discover Mr. McKinnie's own press releases and interviews fast enough and that they were not set forth on Plaintiff's Rule 26 disclosures. First, the evidence is clear that all this information was available to Mr. McKinnie <u>because he created it</u>. Plaintiffs merely discovered this information during their due diligence and each of the documents were described in Plaintiff's Rule 26 disclosure. Copies of the interviews were produced to Mr. Sacher, electronically and both in audio and DVD format. So there is no mistake as to the nature of Mr. McKinnie's admissions, another of the copy of the DVD is being produced to the Court for its review.

Mr. McKinnie cannot overcome the testimony of identified witnesses, some of whom provided declarations and the testimony with is summarized in Plaintiff's Rule 26 disclosures. Each of the witnesses were expected to testify in support of Plaintiff's allegations against Mr. McKinnie. Defendant's counsel does not even attempt to rebut

the proposed testimony of the following witnesses, (disclosed on the Rule 26 disclosures), each of whom would support the claims against Mr. McKinnie:

    Joseph Smith
    Spectacular Smith
    Diamond Smith
    Corey Mathias
    Craig Kallman
    Michael Kushner
    Marjorie Klein
    Allen Jacobi
    Charles Young
    Kasha
    Artie Fox
    Mariah Johnson
    DJ Supa Cindy
    Rex Zamour

Mr. McKinnie does not even attempt to explain how the declarations of Allen Jacobi and Marjorie Klein, (two attorneys who represented an artist named Trick Daddy) does not fully support Plaintiff's claim. Their testimony, together with the agreement they negotiated with Mr. McKinnie's personal attorney (who also presented Swagga Entertainment) conclusively demonstrates Mr. McKinnie's investment as a principal of Swagga Entertainment. Their testimony was that Mr. McKinnie's personal attorney, Mr. Silverman, insisted on inserting a "key man" clause for Mr. McKinnie in a contract between Swagga Entertainment and Trick Daddy. That contract would make no sense unless Mr. McKinnie was a principal in Swagga Entertainment.

B)    <u>Mr. McKinnie did not make a loan to Swagga Entertainment as he alleges</u>.

Mr. McKinnie claims that his $70,000 payment to Swagga Entertainment is a loan. As proof, he attaches the general ledger of Swagga Entertainment. However, this document does not support his argument. Swagga Entertainment's general ledger shows that on July 30, 2007, Mr. McKinnie paid $70,000 to Swagga Entertainment. There is no

characterization of this payment as a loan as McKinnie now alleges. Further, no loans documents have been provided by Defendants. The general ledger does not evidence a single repayment. Thus, there is no documentation, nor evidence that shows the $70,000 to be a loan as Mr. McKinnie's counsel now claims. Clearly, the absence of any attempt to repay the money supports Plaintiff's position it was a capital contribution.

      C) <u>McKinnie has misrepresented Plaintiff's compliance with Rule 26</u>

At the hearing, Plaintiffs presented 9 emails demonstrating their attempt to comply with Rule 26. Mr. McKinnie now misrepresents the importance of those emails. On August 29, 2008, September 2, 2008, and September 4, 2008, Plaintiff sent e-mails to Mr. Sacher enclosing the Rule 26 disclosures. (See D.E. 74 and 97). In addition, Plaintiff sent separate copies of the Rule 26 disclosures by Federal Express and Plaintiff's counsel certified that he hand delivered yet another copy of the Rule 26 disclosures to Joe Sacher on September 1, 2008. As discussed at the hearing, Plaintiff's counsel testified that, in additional to all the other e-mails, he gave Mr. Sacher another copy of the Rule 26 disclosures during a deposition in September 2008. Mr. Sacher denies this fact. In any event, the e-mails demonstrate that Mr. Sacher was provided with e-mails and Federal Express copies of the Rule 26 disclosures and documents. Whether or not, Mr. Sacher actually took the additional copy that was placed on the deposition table is inconsequential in view of all the other evidence of Plaintiff's compliance with Rule 26.

      D. <u>Plaintiff's Rule 26 disclosures were not incomplete</u>

Mr. McKinnie overlooks the nature of Plaintiff's claims, to wit: trademark infringement. Plaintiff's damages were disgorgement of the profits earned by the Defendants as a result of the utilization of Plaintiff's trademark and profits earned by

Defendants from the exploitation of the recordings which were properly owned by Plaintiff pursuant to Mr. Cooper's contract with Bluestar. Since all of the documents pertaining to Defendant's profits were in the custody of Defendants and since Plaintiffs had not yet received those documents, Plaintiffs could not provide an actual damage calculation, which was fully explained in the Rule 26 disclosures. Plaintiffs did provide a response in their answers to interrogatories. (See D.E. 97).

E) <u>Plaintiffs presented a valid reason why they dismissed their case</u>

As explained at the hearing, Plaintiffs decided to dismiss the claims against Mr. McKinnie so they could focus their limited resources, pursing a claim against Mr. Cooper, as opposed to suing both Mr. Cooper and Mr. McKinnie. (D.E. 114). This same explanation was set forth in their motion to dismiss. (D.E. 114).

F) <u>Mr. McKinnie misrepresents the nature of the "3rd CD"… which merely depicts Plaintiffs downloading McKinnie's material from the internet</u>

Mr. McKinnie's motion accuses counsel of "manufacturing" evidence and misrepresenting the date the evidence was created. At issue are two CDs produced as part of the Rule 26 disclosures. The CDs contain the interviews created by Mr. McKinnie and Mr. Cooper which were downloaded from the internet. Despite the documented attempts to send copies of these interviews to Mr. Sacher, electronically, and via delivery Mr. Sacher continued to allege he had not received them. As a result, undersigned counsel had yet another copy made. The information was once again downloaded from the internet. This time, Plaintiff videotaped themselves downloading the material, so there would be no question where the materials were found. No new evidence was manufactured, nor created. Rather, Mr. Sacher's misrepresentation and his unfounded accusations expose the manner in which this matter has been litigated.

5

      G)     Plaintiff's compliance with Florida Statute 57.105(4) and Rule 11
<u>Safe Harbor</u>

At the hearing, Mr. Sacher misrepresented to this Court that Plaintiff did not dismiss the claim against Mr. McKinnie within the 21 day safe harbor period.

Now, he admits that he sent the statutory demand letter on October 24, 2008 and just 8 days later Plaintiff filed a Motion for Leave to Dismiss. (D.E. 114) That motion was granted (D.E. 219). In granting dismissal, this Court noted that Mr. McKinnie's interests were protected by the granting of the dismissal. (D.E. 219).

Mr. McKinnie's citation to *Robinson v. Alutiy-Male LLC*, 2007 W.L. 2425653, (S.D. Fla. 2009) undercuts Mr. McKinnie's arguments, because Plaintiff here, did in fact move to dismiss the claims within the 21 day safe harbor period. In *Robinson*, the Court found under similar circumstances that the moving party was <u>not</u> entitled to sanctions under Fed. R. Civ. P. 11 or Fla. Stat. §57.105.

## Conclusion

Plaintiffs have produced ample evidence their claims against Defendant McKinnie were bonafide and legally tenable. The 14 witnesses, the general ledger of Swagga Entertainment, the Trick Daddy contract, the radio and television interviews and press releases, (issued by Mr. McKinnie) show that Mr. McKinnie was a principal in Swagga Entertainment. Mr. McKinnie has not presented any evidence to rebut the foregoing, other than speculative arguments. Accordingly, if there is any doubt by the Court on this issue, Plaintiffs request an evidentiary hearing so that the court can hear the testimony of the Plaintiff's witnesses, review the public interviews given by Defendants, and review the documents referenced by the parties.

      Respectfully submitted.

By: Richard C. Wolfe, Esq.
Counsel for Plaintiffs
Fla. Bar No: 0355607
Email: Rwolfe@rra-law.com
ROTHSTEIN ROSENFELDT ADLER
Bank of America Tower International Place
100 S.E. Second Street, Suite 3300
Miami, Florida 33131
Tel: 305-381-7115 / Fax: 305-381-7116

## CERTIFICATE OF SERVICE

I hereby certify that on October 8, 2009, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Richard Celler, Esq., Morgan & Morgan, 7450 Griffin Road, Suite 230, Davie, Florida 33314 and Robert Meloni, Esq. Meloni & McCaffey, 1350 Avenue of the Americas Suite 3100 New York, NY 10019 and Barton Sacher, Esq. 1401 Brickell Avenue, 7th Floor, Miami, Florida 33131 via transmission of Notices of Electronic Filing generated by CM/ECF.

By: Richard C. Wolfe, Esq.
Fla. Bar No: 0355607
Counsel for Plaintiffs
Email: Rwolfe@rra-law.com
ROTHSTEIN ROSENFELDT ADLER
Bank of America Tower International Place
100 S.E. Second Street, Suite 3300
Miami, Florida 33131
Tel: 305-381-7115 / Fax: 305-381-7116